Anyway, that said, we'll now hear your argument in the telesafe matter. Thank you, Your Honor. May it please the Court, all opposing counsel, my name is Trevor Hart. I represent First Security Bank in this matter. Did you bring your daughter with you today? And I brought my daughter with me today. Welcome to our courtroom. And this is the first time that I've had the privilege and honor of appearing before this Court, and so I'm somewhat nervous. I will try and convey the bank's position. Your Honor, I think where I'd like to begin is in the standard review, which, to my understanding, is appropriate to standard review on a summary judgment, is de novo. This was a case where both parties filed motions for summary judgment that were cross-motions. Nevertheless, I believe it's appropriate for the Court to determine whether or not the district court, or in this case the bankruptcy judge, correctly applied the law. And the bank would assert that both, with all due respect to the bankruptcy judge and the appellate panel, that both the bankruptcy court and the appellate panel misapplied the law. And I think that perhaps the bankruptcy judge's decision may have come from perhaps a misunderstanding or a misinterpretation of the facts of the case. May I ask you one question about that in a way? If I understand it correctly, the bankruptcy court found that the bank was judicially astopped from arguing that it, the bank, was Telsafe's de facto creditor. Is that correct? I believe either the bankruptcy court or the appellate panel found that. In fact, I believe it was the bankruptcy court. Yeah. And the bankruptcy appellate panel recognized that. And that determination isn't before us. I mean, we have to accept that. So accepting the fact that the bank cannot argue that it was Telsafe's de facto creditor, I don't understand how the new value can be given by the bank, because the bank is not such creditor within the meaning of the statute. Thank you, Your Honor. I do understand the rulings of the lower courts were that the bank is judicially astopped. However, I don't think there's been any inconsistent position taken by the bank. I believe that the position of the bank was correctly perceived by the lower courts as that, I believe, the same tripartite, if you will, tripartite relationship that existed in the Jeffrey Bigelow case. There is no question as to what the facts of the case were. The bank loaned the money via a promissory note to Dr. Blick and staff. All the money went directly to Telsafe. Everybody knew that. It's not before the Court. I don't think it's even in the record. The problem is that at least under the statute, as I read it, the creditor who extends or contributes the new value has to be the person who contributes the new value, has to be the creditor. And if the bank can't argue that it was the creditor, then isn't it a catch-22, basically? Well, Your Honor, I would point or direct the Court's attention to Section 547G, which speaks of the burden of proof in the matter. And that section says that it is the burden of the creditor or the party in interest to prove the elements of the defense. In this case, the bank isn't arguing that it is the creditor. I think how it must be viewed as is that Dr. Blick and staff was a creditor. And I don't think the trustee has ever argued that that was not the case. Clearly, he was. Clearly, he was a creditor. There is a promissory note out there. There was value given. But under the statute, doesn't the contribution have to come from the same creditor? Well, it may be that the bank is estopped to deny that it was a creditor. But as the Court has perceived, Dr. Blick and staff was also a creditor. And if we plug the values of the parties into the plain language, what this Court has said is the plain language of the statute. The trustee may not avoid a transfer to or for the benefit of a creditor. No, such creditor. And that's kind of the same problem Judge Reimer is having. If the money had been paid by Telsave to Dr. Blick and staff, then I would have no problem saying that under the statute, new value was given. The problem is that the payments were made to FSB, and FSB was not such creditor for purposes of having received the new or having given new value. Well, if the Court will indulge me, I would like to read just the section 547C4 with the names of the parties inserted. Hang on a second. Okay. Go ahead. And acknowledging that it may be viewed that both the bank and Dr. Blick and staff were creditors of this debtor. The trustee, in this case the plaintiff, may not avoid under this section a transfer to or for the benefit of a creditor, in this case Dr. Blick and staff. So may not avoid a transfer for the benefit of Dr. Blick and staff. And there is no question in this case that the transfers that Telsave made to First Security Bank benefited Dr. Blick and staff. They reduced the amount of Dr. Blick and staff's obligation to the bank. Okay. So for the benefit of Dr. Blick and staff to the extent that after such transfer, such creditor, Dr. Blick and staff, gave new value to or for the benefit of the debtor. Not secured by an otherwise unavoidable security interest. And I believe the rest of this statute is not in question. But how can – I follow how Blick and staff could make the argument that you make. I'm having trouble following how the bank can. Well, it seems to me that the result is the same. I mean, why – again, the bank has argued consistently that substance should be taken over form. Why should it make – I don't believe it should make, as a policy matter, any difference that the money went directly to First Security instead of through Dr. Blick and staff. And I think Congress recognized that this is the kind of situation that happens all the time. You don't live in a one-dimensional world with two people. Sometimes there are triangles. There are relationships where money flows among all three parties. In other words, if – and there's – I think the trustee wouldn't even argue. If the money had gone directly from Telsec to Dr. Blick and staff and then from Dr. Blick and staff to the bank, we wouldn't even be here. Why should it make any difference that the check went directly to the bank? The correct analysis, and this Court has said it before in Laguna Beach Motors, that the new value defense, the principle of the new value defense is that the new value to the debtor will offset the payments and the debtor's estate will not be depleted. In this case, the debtor's estate was not depleted. Also, the purpose of the new value defense is to encourage people who are working with distressed companies to continue to work with them. If Dr. Blick and staff had known in advance that payments to the bank that helped both him and the debtor, that his payments back to the company were going to somehow not be credited, he wouldn't have had the incentive to keep working with Telsec. So, again – You know what? I'm going to come back one more time because I just want to hear you on it. I think the result is wacky, basically. But I can't get around the judicial estoppel finding that the bank is not a creditor. It seems to me under the statute it just has to be the creditor. Perhaps we're – perhaps the difference lies in the difference between the word A and the word the. Such or any. It's really the difference. Such creditor or any creditor. But, again, I would argue that the language of the statute is plain and that by inserting the relationship of the parties directly into the language of the statute, the only result that can be reached is that a transfer – a transfer was made. Dr. Blick and staff was a creditor. Well, let me ask you this. Can – you think the words of the statute can be plugged in – I mean, the words – the parties' names can be plugged into the statute. Shouldn't it be plugged in so it would read, you know, Davis may not avoid under this section a transfer to or for the benefit of the bank, to the extent that after the transfer the bank gave new value to or for the benefit of Telsec? I would say no, Your Honor, because it doesn't say the creditor, the defendant – the defendant creditor. The bank may be a creditor in this case, but, again, the Court has recognized that, clearly, Dr. Blick and staff is also a creditor. Sure. The difficulty in reconciling those is that there was only one obligation. There was only one – well, there were multiple obligations. There was only one loan of money. Dr. Blick and staff was a creditor, not – maybe not the creditor, but the whole – again, the purpose of this statute has been interpreted already by this Court. Was the estate depleted? In this case, it wasn't. Is – are people such as Dr. Blick and staff going to have the incentive to continue to work with distressed companies if the Court rules in the bank's favor in this case? Yes. Will he, if the Court rules in favor of the trustee? No. Again, I would argue that with respect to the subsequent new value defense, that Judge Curley did not correctly apply the law. In fact, in her decision, she said, here's what the Ninth Circuit says. Here's the purpose of the new value rule. And then she didn't even address it in her opinion, and neither did the bankruptcy appellate panel. That's the reason why we're here. With all due respect to the lower courts, we don't believe that there at least has been an analysis that has applied the law. And again, perhaps the difference in the way we're viewing this is the difference between the word A and the word the. That is the bank's argument with respect to the subsequent new value defense. With respect to the ordinary course of business, again, Judge Curley's decision talks about a period of a year when no payments were made on a loan. Again, with all due respect, I think she either misunderstood or misapplied the facts. The loan, the promissory note from Dr. Blickenstaff, or from Telsave to Dr. Blickenstaff was in January or February of 1997, which called for payments starting in the spring of 1997 through that summer. Telsave made those payments. I don't know what period of the year that she's talking about, but I would understand if the bankruptcy case, if there were a year where no payments were made, and then all of a sudden a load of string of payments right before the bankruptcy filing come along, that would tend to look suspicious. However, we have a promissory note in the spring of 1997, and throughout the course of the spring and summer of 1997, Telsave made payments as it was obligated to Dr. Blickenstaff to make. There was no promissory note from Telsave to the bank. Why? Well, probably, although it's not in the record as a fact, there was no testimony given, Telsave couldn't qualify for the loan. Dr. Blickenstaff wasn't a guarantor. He was the obligor under the loan from First Security Bank. But that's the way the parties chose to create the transaction. So if Telsave is obligated to Dr. Blickenstaff under the terms of a promissory note and makes payments to Dr. Blickenstaff, well, makes payments under the terms which fall under the terms of that promissory note, granted the last payment appears to be twice the amount of the normal monthly payment, however, it was made within the terms of the loan or the promissory note from Dr. Blickenstaff. You skipped August and you made a double payment in September. Yes, there was a month skipped. So the issue, as I see it, is which note applies. Clearly, if the promissory note between Dr. Blickenstaff and the bank to which Telsave is not a party, if that note applies, well, clearly that last payment was outside the grace period. And that's what the lower two courts have held. However, Telsave was not a party to that note. I would argue that Telsave is bound to follow the terms of its promissory note that it made to Dr. Blickenstaff. And if that's the case, then the payments were made. Albeit a payment was skipped, the payments were made on time. Frankly, in my opinion, that's the lesser of the two arguments, the weaker and probably the less interesting to me. Again, I would say that under the clear language of the subsequent new value defense, to take in light of 547G, which I believe allows for three-party relationships as well as the Bigelow case in the fraudulent transfer action, that a third party may make that defense. If the payments were made to the trustee or if the payments were made to Dr. Blickenstaff, the trustee, then we would not be here. That was not the case. I, again, cannot see why it should make a difference. The address that Telsave puts on the check, the mailing address that it sends a check to, should make any difference. The focus of the Court's attention should be on the effect upon the estate. Mr. Hart, what I hear you arguing is that the statute should be interpreted in light of commercial reality. The problem is that we are constrained by the language of the statute. And it seems to me if there's a problem with the language of the statute not equating to commercial reality, the banking industry needs to go back to Congress and get the statute amended. I'm not sure that we as judges have the authority in the guise of interpreting a statute to rewrite it in a way that Congress should have written it if they'd been thinking about this problem. Again, Your Honor, it may just be that we're looking at the section differently. However, in the not a Ninth Circuit case. Do I have any time left? Yeah, you've got 2 minutes and 20-some odd seconds. Is your timer not working on your bench there? Oh, that's what that is? It's not 2 o'clock in the afternoon. Several people have asked the same question, so I thought maybe it isn't working. Well, if you couldn't tell I was terrified before. You're doing fine. Would you like to? I believe it was in the Bigelow case, the language of the Bigelow case, where the court of appeals, again, it was not a Ninth Circuit case, the court of appeals said that the language of the statute allows for this. It allows for the commercial realities. The language of 547G allows for it. The language of 548 allows for it. The purposes of 548 and 547 are the same. Again, net effect on the estate, encourage people to continue working with debtors. While the result, in this case, if the court rules in favor of the bank, may be a little bit wacky, at least it is consistent with the language of the statute. Now, I'm saying the result that actually occurred is wacky, but I don't see a way around it. That's the difficulty. Mr. Hart, would you like to save the remaining time for rebuttal? Okay. Mr. Lee. May it please the Court, opposing counsel, my name is Edwin Lee. I represent Robert Davis, bankruptcy trustee in this case. If I might, I'd like to just take a little detour at the start here to make a little hypothetical that I think helps at least me understand a little better where this all stands. If we had the typical case, Company A needs some funds, it goes out and borrows some money from the bank, and the bank lends money to Company A. It's guaranteed by the principle of Company A. Repayment starts. Company A falters, is starting to run short of money. A late payment, and there's probably some demand made by the bank, and the late payment is made, which includes two late payment penalties. Later, the guarantor, recognizing that his company is now faltering, running out of money, puts some additional funds into the company. And in that case, the trustee would sue the bank and seek to get the money back for the faltering late payment during the preference period. And I don't think in that case there would be any question about the outcome of this issue. The only difference that we have in this case is the original documentation. Now, of course, the case that I just cited is probably every bankruptcy case that's ever been filed on behalf of a company. There's probably a principal out there in most cases. There's usually a personal guarantee, because a lot of these companies are small companies. This is just a very typical situation we're talking about. As I say, the only difference that we have here is the original documentation. In the original documentation here, the loan is made on the promissory note to the principal of the company. But the dollars were deposited directly into the company's bank account. The company controlled all the draws on the loan, and actually the principal in this case wasn't even the person who controlled those draws. There were independent officers at the company that sought those draws, that is, in the present case. All parties expected that the repayment would come from the debtor, the repayment of the loan from the one that was documented to be to the principal. All invoices are sent to the debtor, and only the debtor, in fact, actually paid on the loan. Now, this, again, is pretty much entirely the fact scenario that we saw in the Jeffrey Bigelow design case. And in that case, as in this case, the trustees sought to recover the funds from the bank as a fraudulent transfer, thinking that the debtor was actually paying the debt of the principal. And as an answer to this question, Justice Kagan, I don't think it makes any sense at all in this kind of situation to say that the new value which was infused into the company wasn't for the benefit of the bank. I mean, it was via Blickenstaff. It certainly was. And, and why isn't – if you put aside the judicial estoppel issue, then that's a different question. Why isn't this result just plainly wrong? Well, aside from that, I think what we're talking about here are two different – I mean, the purpose of the new value defense is to encourage a vendor or, in this case, a creditor, to continue doing business with the debtor. Well, there's nothing here that indicates the bank was continuing to do business with the debtor. Rather, the principal is still – is just putting additional money in, and I think it's somewhat apparent just from the pattern of things. Well, I'm not so sure. I mean, if the payment to the bank is avoided, okay, isn't the bank simply – the banks have to give money back to Telsafe. Yes. So then the bank's going to go to Blickenstaff to get the money back, right? I would think so. And if – but if Blickenstaff, if the investor, knows that that's going to happen, then why would he ever agree to infuse the capital? I think it's – remember, this is – It makes no sense. I'm sorry. Go ahead. It makes no sense, does it? I think it's not an atypical case, and that's why I started with a hypothetical I did. The – the principal of the company is looking at this, seeing his company faltering. He thinks he still has a good business. He puts additional money in to try to keep it moving along. Yes. And – but for the documentation in this case, it's the same thing. Doesn't – doesn't eventually the bank go back and look to the credit – to the guarantor of this loan, if it had been documented in that fashion, and say, you pay us because the company can. It's really – it comes out the same way that you're talking about here, and that is that the – the principal winds up paying for the faults of the company. In this case, it happens that we have a solvent guarantor, and that's why the – the issue has some real punch to it. Probably in most instances, we wind up with an insolvent guarantor as well. But I think that's – I think that's the parallel here, is that we're talking about a not in line with the reality, isn't it? As the – as is said in the Jeffrey Bigelow case, the attention should be drawn to the reality of the situation, not the formal structure. The – the debtor in this case is really the – or rather, the bank is really the de facto creditor in this case. So – But you can't argue that fact, right? I mean, you say commercial reality, but we also have a doctrine called judicial estoppel, which says that we can't consider that. Okay. Right? I mean, how do we get around that problem? Well, as far as I know, no one has ever argued that the bank is not the creditor in this case. The bank didn't make that argument. I'm sorry. Because the bankruptcy court says you can't. You're judicially estopped. I – well, sorry for backing up on that one. But the judicial estoppel argument, as I understood it, is that the – I'm sorry. I'm drawing a blank right here. Well, I didn't mean to get you off on it. Okay. Go back to wherever you were before. Okay. The debtor cites three cases concerning the new value defense, Laguna Beach Motors, Alonka, and Forum Tubes. In each of these cases, the creditor provides new value to the debtor or provides new value in some fashion, the creditor being the one who was sued in each of these cases. In the first two cases, the creditor made the transfers to a third party on behalf of the debtor. And in the Forum Tubes case, the issue was not whether or not there was payment to the debtor, which there was. There was new value given to the debtor in terms of new product being sent to the debtor. In that case, the question was whether there was payment for that new value because it was paid for under a letter of credit. Here, in this case, there was no transfer to the debtor from First Security Bank. Going on to the ordinary course defense, first of all, as indicated, FSA, as I said, CSB has made no attempt to prove two of the three prongs of the defense. There's nothing here indicating that this was incurred in the ordinary course of business, that the debt was incurred in the ordinary course of business, nor is there any attempt to show that the payment was, that the payment was, that the payment was, that the payment was, that the payment was ordinary in relation to the industry standard. The only discussion that we've had here is whether or not the payment was ordinary as between the parties. Moreover, First Security Bank is attempting to use the notion that the payment was ordinary as a note between the debtor and the principal of the debtor as the basis for determining ordinary course. But what the debtor undertook to do was to pay the loan of the first note, that is, the note between the lender, FSB, and the principal. And if nothing else, it can be seen by the payments that are made and the one that's contested here. The payment that's contested here includes not only a late payment fee for one payment, but rather for two payments. So we have here an attempt by the debtor to undertake the note that was, undertake payment of the note that was between the debtor and, excuse me, between the FSB and the principal. And as you can see, this is, you know, this is the last payment, this results in a double payment, and it's included two late payment penalties. So, consequently, I think that unless there's any other questions, I'm not going to argue. Thank you. Thank you, Your Honor. Are you, Mr. Hart? Thank you. I'd like to make a couple of last points here in conclusion. First, I don't believe that the judicial estoppel finding precludes a finding in favor of First Security Bank. First Security Bank was a creditor of Telsave. May not have had a note, but if First Security had sued Telsave under an unjust enrichment theory or money hadn't received, there probably is a legal theory that would allow First Security to have recovered absent a bankruptcy from, directly from Telsave. Be that as it may, it is also, it is equally clear that Dr. Blickenstaff was a creditor of Telsave under the language of the statute. The statute is clear. The statute allows, under the Bigelow case, courts have, at least the Fourth Circuit, which is structured, allows for a tripartite relationship. Thank you for your time. Thank you, counsel, both of you, for the matter just argued. And the matter will be submitted. The Court will stand in recess for the day. Thank you.
judges: Rymer, Tallman, Bea